# UNITED STATES DISTRICT COURT

# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JULIE A. SMITH,<br><br>                                      Plaintiff,<br><br>        vs.<br><br>MICHAEL J. ASTRUE, Commissioner of<br>Social Security Administration,<br><br>                                      Defendant. | CASE NO. 07cv1838-IEG-NLS<br><br>**ORDER:**<br><br>**(1) DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT; (Doc. No. 7) and**<br><br>**(2) GRANTING DEFENDANT'S CROSS-MOTION FOR SUMMARY JUDGMENT.  (Doc. No. 8.)** |

Plaintiff Julie A. Smith, proceeding by and through counsel, has filed this action pursuant to 42 U.S.C. § 405(g) for judicial review of the Commissioner's final decision denying her application for Social Security Disability Benefits under Title II of the Social Security Act.  Plaintiff moves the Court for summary judgment reversing the Commissioner's decision and ordering an award of benefits.  (Doc. No. 7.)  The Commissioner has filed a cross-motion for summary judgment, asking the Court to affirm the denial of benefits.  (Doc. No. 8.)  These motions are appropriate for submission on the papers and without oral argument pursuant to Local Rule 7.1(d)(1).  Upon review, for the reasons explained below, Plaintiff's motion for summary judgment is DENIED and the Commissioner's cross-motion is GRANTED.

//

//

BACKGROUND

Procedural History

Plaintiff applied for Disability Insurance Benefits under Title II of the Social Security Act on May 13, 2005.  (Administrative Record Transcript ("Tr.") at 12.)  Plaintiff alleged that she became disabled on July 2, 2004 due to birth related scoliosis[1] leading to nerve root impingement[2] at L2, chronic degenerative disc disease, and depression.  (Id. at 62.)  The Social Security Administration denied plaintiff's application initially and upon reconsideration.   At plaintiff's request, an Administrative Law Judge ("ALJ") held a hearing on September 28, 2006.  (Id. at 267-304.)  On October 27, 2006, ALJ Jerry F. Muskrat issued an unfavorable written decision finding plaintiff was not disabled.  (Id. at 9-20.)

Plaintiff requested review by the Appeals Council of the ALJ's decision.  The Appeals Council denied Plaintiff's request for review on August 8, 2007.  (Id. at 4-6.)  Plaintiff filed this action for judicial review on September 20, 2007.

Factual Background

Plaintiff is a 47-year-old woman with a high school education and past relevant work as a telephone solicitor and classified ad clerk I.  (Tr. at 13.)  She alleges a disability due to birth related scoliosis leading to nerve root impingement at L2, chronic degenerative disc disease, and depression.  Plaintiff has not engaged in any gainful activity since July 2, 2004, the alleged onset date of her disability.

Plaintiff's treating physician is Dr. Jeffrey Gordon.  (Tr. at 118; 256-62.)  Dr. Gordon concluded plaintiff cannot sit for an hour at one time; can only stand or walk for one hour at a time; can frequently lift up to five pounds; can occasionally lift 5-20 pounds; and can never lift more than 20 pounds.  (Tr. at 256.)  Dr. Gordon also found plaintiff cannot squat, crawl, or climb,

---

[1]Scoliosis is a lateral curvature of the spine.  Webster's Third New International Dictionary 2035 (3rd ed. 1986).

[2]Impingement is a sharp collision or direct touching.  Webster's Third 1134.

1    but can occasionally bend or reach.  (Id.)  Dr. Ned Chambers prescribed plaintiff Lexapro[3] for her

2    depression. She also takes Vicodin, prescribed by Dr. Gordon, for her back pain.  (Tr. at 119.)

3            Prior to the administrative hearing, plaintiff met with Dr. Mounir Soliman for a pyschiatric

4    evaluation.  Dr. Soliman concluded petitioner suffered from depression but that she is able to

5    "withstand the stress and pressures associated with an eight-hour workday, and day-to-day

6    activities."  (Tr. at 248.)  Plaintiff also met with Dr. Thomas Sabourin, who diagnosed plaintiff

7    with thoracolumbar[4] scoliosis, mild-to-moderate degenerative disc disease, right shoulder girdle

8    adhesions,[5] and an unknown type of right cervical-thoracic surgery.  (Tr. at 232-33.)  Dr. Sabourin

9    found that plaintiff can lift and/or carry twenty pounds occasionally and ten pounds frequently; can

10   stand and/or walk up to six hours in an eight-hour workday; can sit for six hours in an eight-hour

11   workday; cannot work with her right arm above shoulder level; and is limited to occasional

12   climbing, stooping, kneeling, and crouching.  (Tr. at 232-33.)

13           Dr. William Temple, an orthopedic surgeon, reviewed the medical evidence presented by

14   plaintiff and the examining physicians, and testified at the hearing before the ALJ.  (Tr. at 267.)

15   Dr. Temple concluded plaintiff can lift and carry twenty pounds occasionally and ten pounds

16   frequently; can stand and walk six hours in an eight hour workday; can sit six hours in an eight

17   hour workday; must periodically alternate sitting and standing five minutes every hour to relieve

18   pain or discomfort; can occasionally push or pull with the right upper extremity; can occasionally

19   stoop or bend; must never climb ladders, ropes, or scaffolds; must not perform any overhead

20   reaching with the right arm; and must avoid all exposure to vibration and unprotected heights.  (Tr.

21   at 288-92.)

22   //

---

23           [3]Lexapro is a selective serotonin reuptake inhibitor used to treat depression and generalized

24   anxiety disorder.  United States Food and Drug Administration, Patient Information Sheet Lexapro,
     www.fda.gov/cder/drug/InfoSheets/patient/escitalopramPT.htm (last visited March 25, 2008).

25

26           [4]"Thoraco" refers to the chest, and "lumbar" refers to the group of vertebrae between the chest
     and the end of the spine.  Webster's Third 1345, 1997 & 2380.

27           [5]The shoulder girdle or "pectoral girdle" is a bony ring at the anterior end of the vertebrate

28   trunk supporting the arms.  Webster's Third 959.  In this context, an adhesion is an "abnormal union
     of surfaces normally separate by the formation of new fibrous tissue resulting from an inflammatory
     process."  Id. at 26.

DISCUSSION

Standard of Review

To qualify for disability benefits under the Social Security Act ("the Act"), an applicant must show that: (1) he or she suffers from a medically determinable impairment that can be expected to result in death or has lasted, or can be expected to last, for a continuous period of twelve months or more; and (2) the impairment renders the applicant incapable of performing the work that the applicant previously performed and incapable of performing any other substantially gainful employment that exists in the national economy.  42 U.S.C. § 423(d)(2)(A).  An applicant must meet both requirements to be "disabled."  Id.

The Social Security Regulations employ a five-step process to determine whether an applicant is physically disabled under the Act.  If an applicant is found to be "disabled" or "not disabled" at any step, there is no need to proceed to subsequent steps.  Tackett v. Apfel, 180 F.3d 1094, 1098 (9th Cir. 1999) (citing 20 C.F.R. § 404.1520).  Although the ALJ must assist the applicant in developing the record, the applicant bears the burden of proof as to the first four steps.  Id.  If the fifth step is reached, the burden shifts to the Commissioner to rebut the finding of disability.  Id.  The five steps are as follows:

  (1) Is the claimant presently working in any substantially gainful activity?

  (2) Is the claimant's impairment severe?

  (3) Does the impairment meet or equal one of a list of specific impairments?

  (4) Is the claimant able to do any work that she has done in the past?

  (5) Is the claimant able to do any other work that exists in significant numbers in the national economy?

20 C.F.R.§ 416.920; see also Celaya v. Halter, 332 F.3d 1177, 1180 (9th Cir. 2003) (describing the five step sequential evaluation process).

Section 405(g) of the Act allows unsuccessful applicants to seek judicial review of a final decision of the Commissioner.  42 U.S.C. § 405(g).  This Court has jurisdiction to review the Commissioner's benefits decision and "shall have the power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the

07cv1838

1   Commissioner, with or without remanding the case for a hearing." 42 U.S.C. § 405(g).

2       The Commissioner's denial of disability benefits will only be disturbed if the ALJ's

3   findings are based on legal error or are not supported by substantial evidence. <u>Mayes v.</u>

4   <u>Massanari</u>, 276 F.3d 453, 458-59 (9th Cir. 2001). "Substantial evidence" is "more than a mere

5   scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might

6   accept as adequate to support a conclusion." <u>Sandgathe v. Chater</u>, 108 F.3d 978, 980 (9th Cir.

7   1997). In determining whether there exists substantial evidence to support the ALJ's finding, the

8   court must weigh both the evidence that supports and the evidence that detracts from the ALJ's

9   conclusion as that evidence exists in the record. <u>Id.</u> "Where the evidence can rationally be

10   interpreted in more than one way, the court must uphold the Commissioner's decision." <u>Mayes</u>,

11   276 F.3d at 459 (citation omitted).

12   <u>The ALJ's Decision</u>

13       Here, the ALJ utilized the five-step eligibility test to analyze plaintiff's claim. With regard

14   to step one, the ALJ noted that plaintiff has not engaged in substantial gainful employment since

15   her alleged disability onset date of July 2, 2004. (Tr. 13.) At step two, the ALJ found that

16   Plaintiff's major depressive disorder is not severe, but that she suffers from degenerative

17   osteoarthritis,[6] scoliosis of the lumbar spine, and a weak right shoulder girdle, which are severe

18   medically determinable impairments. (<u>Id.</u> at 15) At step three, the ALJ found that plaintiff's

19   impairments did not individually or in combination equal any of the criteria contained in the

20   Listing of Impairments, Appendix 1, Subpart P, Regulations Number 4. (<u>Id.</u> at 16.) Finally, at

21   step four, the ALJ found that despite plaintiff's combined impairments, she could perform her past

22   relevant employment as it is performed in the national economy. (<u>Id.</u> at 18.)

23       The ALJ's specific relevant findings were:

24         1.   The claimant met the disability insured status requirements of the Act on her alleged disability onset date of July 2, 2004, and she continues to meet those

25            requirements through the date of this decision.

26         2.   The claimant has not engaged in substantial gainful activity since her disability onset date of July 2, 2004.

27

28       [6]This type of arthritis is characterized by degenerative changes in the bone and cartilage of joints and progressive wearing of the joint surfaces. <u>Webster's Third</u> 593.

3. The claimant suffers from the following medically determinable severe impairments: degenerative osteoarthritis and scoliosis of the lumbar spine, and a weak right shoulder girdle.  The claimant has no severe mental impairment.

4. The claimant's impairments, alone or in combination, have not met or equaled the requirements of any listing in 20 C.F.R., Part 404, Subpart B, Appendix 1 (Listing of Impairments), since her alleged disability onset date.

5. Since July 2, 2004, the claimant has had the following residual functional capacity: lift and carry twenty pounds occasionally and ten pounds frequently; stand and walk six hours in an eight-hour workday; sit six hours in an eight-hour workday but must periodically alternate sitting and standing five minutes every hour to relieve pain or discomfort; occasionally push or pull with the right upper extremity; occasionally stoop and bend but never climb ladders, ropes or scaffolds; no overhead reaching with the right upper extremity; and must avoid all exposure to vibration and unprotected heights.

6. The claimaint's allegations of disabling pain, symptoms, and limitation, when considered pursuant to the law of the Ninth Circuit Court of Appeals, Social Security Rules 96-3p and 96-7p, and pertinent regulations, are not credible and are rejected for the reasons stated in the rationale portion of this decision.

7. The claimant has past relevant work as: a telephone solicitor and classified ad clerk I.

8. The claimant's past relevant work as a telephone solicitor and classified ad clerk I is not precluded by the claimant's residual functional capacity and can be performed by the claimant as actually preformed [sic] or as customarily performed in the national economy.  This is in accordance with the testimony of the vocational expert.

9. The claimant was 44 years old on her alleged disability onset date and is currently 47 years of age; at all relevant times, she is considered a younger individual.

10. The claimant has a high school education; such an education is defined as high school and above.

11. The claimant's education and training do not permit direct entry into skilled work.

12. The claimant's skills acquired from her past relevant work are unique to the position or occupation and are not transferable to other work.

13. In the alternative, considering the claimant's age, education, past relevant work experience, and exertional residual functional capacity, Medical Vocational Guideline 202.21 directs a finding of not disabled.

14. Used as a framework for decision making, Medical-Vocational Guideline(s) rule 202.21, 20 C.F.R., Part 404, Subpart P, Appendix 2, recommends a finding that a hypothetical individual of the claimant's age, education, work experience, and residual functional capacity is not disabled since the erosion effect of the claimant's nonexertional limitations on the occupational base presumed to exist by rule 202.21 is significant, yet nevertheless, a

significant number of jobs remain in the occupational base.

15.     The claimant has been able to perform her past relevant work as a telephone solicitor or classified ad clerk I, as well as perform and sustain jobs that constitute substantial gainful activity and exist in significant numbers in the national or regional economy since her alleged disability onset date of July 2, 2004.

16.     The claimant has not been under a "disability," as defined in the Social Security Act, at any time since her alleged disability onset date of July 2, 2004.

(Tr. at 19-20.)

Plaintiff's Allegation of Error

Plaintiff argues the ALJ failed to give clear and convincing reasons why he accepted the findings of the non-examining medical expert, Dr. Temple, rather than her treating physician, Dr. Gordon.  A treating physician's medical opinion is entitled to controlling weight where that opinion "is supported by medically acceptable diagnostic techniques and is not inconsistent with other substantial evidence in the record."  Holohan v. Massanari, 246 F.3d 1195, 1202 (9th Cir. 2001); 20 C.F.R. § 404.1527(d)(2).  Where the opinion of the treating physician is inconsistent with other substantial evidence in the record, "[t]reating source medical opinions are still entitled to deference and must be weighed using all the factors provided in 20 C.F.R. [§] 404.1527."  Holohan, 246 F.3d at 1202 (quoting SSR 96-2p).  "When confronted with conflicting medical opinions, an ALJ need not accept a treating physician's opinion that is conclusory and brief and unsupported by clinical findings."  Tonapetyan v. Halter, 242 F.3d 1144, 1149 (9th Cir. 2001). Where the treating doctor's opinion is contradicted by other examining opinions, the ALJ may reject the treating doctor's opinion as long as he provides specific, legitimate reasons for doing so. Thomas v. Barnhart, 278 F.3d 947, 957 (9th Cir. 2002).  The opinion of an agency expert may constitute substantial evidence where it is consistent with other evidence in the record.  Id.

Plaintiff applies the wrong standard in arguing that the ALJ failed to adequately support his decision to discount Dr. Gordon's opinions.  Relying upon Lester v. Chater, 81 F.3d 821, 830 (9th Cir. 1996), plaintiff argues the ALJ failed to give clear and convincing reasons to reject Dr. Gordon's uncontroverted opinions.  Dr. Gordon's opinions, however, were contradicted by the opinions of Dr. Temple and Dr. Sabourin, such that the ALJ was only required to give "specific, legitimate reasons" for discounting Dr. Gordon's opinions.  Morgan v. Apfel, 169 F.3d 595, 600-

1   01 (9th Cir. 1999).  Dr. Gordon's opinion limited plaintiff to less than sedentary work.

2          The ALJ found Dr. Gordon's conclusions were scant and were merely reports of plaintiff's

3   subjective complaints.  (Tr. at 16.)  This finding is supported by the record, (Tr. at 256-62) and is a

4   legitimate reason for rejecting Dr. Godron's opinion.  <u>Tonapetyan</u>, 242 F.3d at 11149.  The

5   conclusions of the testifying medical expert, Dr. Temple, and the examining physician, Dr.

6   Sabourin, contradicted Dr. Gordon's conclusions.  Moreover, as the Commissioner notes, plaintiff

7   has not challenged the ALJ's determination plaintiff was not credible.  Accordingly, the ALJ's

8   reasons for rejecting Dr. Gordon's opinions were specific and legitimate, and his decision was

9   supported by substantial evidence in the record.

10                                        CONCLUSION

11          For the reasons set forth herein, plaintiff's motion for summary judgment is DENIED and

12   the Commissioner's cross-motion for summary judgment is GRANTED.  The decision of the

13   Commissioner is AFFIRMED, terminating this case.

14

15   **IT IS SO ORDERED**.

16

17   **DATED:  April 1, 2008**

18                                        **IRMA E. GONZALEZ, Chief Judge**

19                                        **United States District Court**

20

21

22

23

24

25

26

27

28